

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| STEPHEN BRADLEY LEMASTER, | * | CIV 11-4019 |
| | * | |
| Petitioner, | * | MEMORANDUM OPINION |
| | * | AND ORDER |
| -vs- | * | |
| | * | |
| WARDEN JORDAN R. | * | |
| HOLLINGSWORTH, FEDERAL | * | |
| PRISON CAMP, YANKTON, | * | |
| | * | |
| Respondent. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Petitioner, Stephen Bradley LeMaster, an inmate who is incarcerated at the Federal Prison Camp in Yankton, South Dakota, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner's action is based on the Bureau of Prisons' administration of the prisoner reentry program under the Second Chance Act of 2007. Petitioner contends that Respondent violated the Second Chance Act by applying a "cookie cutter" approach to ensure that his Residential Re-entry Center (RRC) placement not exceed six months instead of making the required individual determination. Petitioner also contends that several material facts were misstated on the recommendation that was submitted for approval of his RRC placement, and that Respondent violated the Second Chance Act in not providing him with the greatest chance of successful reintegration into the community. Respondent acknowledges that Mr. LeMaster exhausted his administrative remedies.[1]

Residential Re-entry Center Placement and the Second Chance Act

18 U.S.C. §§ 3621(b) and 3624(c) govern the BOP's authority to place inmates in its custody in Residential Re-entry Centers (RRCs), formerly referred to as Community Corrections Centers. *See Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004). 18 U.S.C. §§ 3621(b) grants the BOP general

---

[1]Mr. LeMaster advised that at the time he submitted his petition the result of his final (Central Office) appeal was still pending.

authority to designate a prisoner's placement while the prisoner is in the BOP's custody and requires the BOP to consider the following five factors in making placements:

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence--

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

Under 18 U.S.C. § 3624(c) the BOP has the duty to prepare prisoners for reentry to the community during the final months of the prisoners' terms of imprisonment. Before Congress enacted the Second Chance Act of 2007, Pub. L. No. 110-199, 122 Stat. 657 (2008) (codified at 42 U.S.C. §§ 17501-17555), 18 U.S.C. § 3624(c) provided that the BOP, "to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, *not to exceed six months, of the last 10 per centum of the term to be served* under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community."(Emphasis added).

Effective April 9, 2008, the Second Chance Act amended Section 3624(c) to provide that the BOP "to the extent practicable, ensure that a prisoner serving a term of imprisonment *spends a portion of the final months of that term (not to exceed 12 months)*, under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community."(Emphasis added).The Second Chance Act also directed the Director of the BOP to issue regulations which ensure that placement in a community correctional facility be conducted in a manner consistent with 18 U.S.C. 3621(b), be determined on an individual basis, and be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6). The references to prisoner placements being determined on an individual basis and of sufficient duration to provide the greatest likelihood of success were not contained in

2

the earlier version of 18 U.S.C. § 3624.

The BOP issued an April 14, 2008 Memorandum explaining the legislative changes to the law and providing guidance to BOP staff on administering the new law. The April 14, 2008 Memorandum provides in part: "With minor adjustments ... staff should make inmates' pre-release RRC placement decisions on an individual basis using current Bureau policy, Program Statement No. 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedure (12/16/1998)(hereinafter referred to as PS 7310.04)." The April 14 Memorandum calls for the review of inmates for pre-release RRC placements to be made 17-19 months before their projected release dates, and sets forth the criteria for pre-release RRC placements to coincide with the five factors set forth in 18 U.S.C. § 3621(b).

The April 14 Memorandum also states, "Assessing inmates under the above criteria necessarily includes continuing to consider the more specific, and familiar, correctional management criteria found in PS 7310.04, including, but not limited to, the inmate's needs for services, public safety, and the necessity of the Bureau to manage its inmate population responsibly." The April 14 Memorandum construes the Second Chance Act's requirement that pre-release RRC placement decisions be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community," to mean "Bureau staff must approach every individual inmate's assessment with the understanding that he/she is now eligible for a maximum of 12 months pre-release RRC placement." The April 14 Memorandum states that the different maximum pre-release RRC placement time set forth in PS 7310.04 "must be ignored."

The April 14 Memorandum addresses the expansion of pre-release RRC placement to a maximum of 12 months as follows:

> While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

Although the April 14 Memorandum requires the Regional Director's written concurrence for a pre-release RRC placement exceeding 6 months, the April 14 Memorandum states that inmates

3

whose RRC decisions had already been made were also eligible for a maximum of 12 months' RRC placement. The April 14, 2008 Memorandum states, "Inmates previously reviewed for pre-release RRC placements under any circumstances, and not yet transferred to an RRC, must be reconsidered utilizing the standards set forth in this guidance memorandum." Much of the April 14, 2008 Memorandum has been codified at 28 C.F.R. §§ 570.20-22 (Oct. 21, 2008). The BOP also issued a November 14, 2008 Memorandum which reiterated that an RRC placement beyond six months should only occur if unusual or extraordinary circumstances are present and if the Regional Director concurs. This November 14, 2008 Memorandum again stressed the requirement of individual consideration:

> Inmates are legally eligible to be placed in an RRC at any time during their prison sentence. Federal Courts have made clear that RRCs are penal or correctional facilities within the meaning of the applicable statutes. Staff cannot, therefore, automatically deny an inmate's request for transfer to a RRC. Rather, inmate requests for RRC placement must receive individualized consideration.

The BOP later issued a June 24, 2010 BOP Memorandum entitled "Revised Guidance for Residential Reentry Center (RRC) Placements." This June 24, 2010 Memorandum directs assessment and decision-making practices be such that RRC resources be focused on inmates most likely to benefit from RRC placement in terms of reducing anticipated recidivism. The June 24, 2010 Memorandum states that no longer is Regional Director approval required of RRC placements longer than 6 months. However, the June 24, 2010 Memorandum states that its guidelines regarding the length of RRC placements will have prospective application and that inmates with previously established RRC transfer dates will not be reconsidered.

BOP Recommendation for Mr. LeMaster

Mr. LeMaster pleaded guilty to bank fraud and was sentenced on June 22, 2007, to 70 months of imprisonment, 60 months of supervised release, and $457,149.17 in restitution. Mr. LeMaster has a projected release date of February 2, 2012, via good conduct time release. When he was incarcerated at the Federal Correctional Institution at Sandstone, Minnesota, his Unit Team recommended on April 8, 2010, that he receive a 150-180 day RRC placement. The form which contains this RRC placement recommendation directs consideration of the resources of the facility contemplated, the nature and circumstances of the inmate's offense, the history and characteristics

4

of the offender,[2] any statement by the Court that imposed the sentence, any pertinent policy statement issued by the Sentencing Commission, and the resources of the inmate.[3] The form also directs that the RRC placement recommendation be based on careful consideration of the listed factors and that "the Unit Team will recommend placement which is sufficient duration to provide the greatest likelihood of successful reintegration into the community." Doc. 12, attachment 7. This April 8, 2010, recommendation review occurred 22 months before Mr. LeMaster's good conduct release date.

Mr. LeMaster was transferred from the Federal Correctional Institution in Sandstone to the Federal Prison Camp in Yankton, South Dakota, on August 19, 2010. On September 9, 2010, Mr. LeMaster made an inmate request to staff to consider several issues relevant to his placement that he wanted discussed at his next Unit Team meeting. After meeting with Mr. LeMaster, the Unit Team concluded that the 150-180 day placement was still of sufficient duration to provide him the greatest likelihood of successful reintegration into the community. This meeting was slightly less than 17 moths before Mr. LeMaster's good conduct release date. On September 21, 2010, LeMaster made another inmate request to staff to address inaccuracies in his Inmates Skills Development Plan and to again address his RRC placement recommendation, which he characterized as being much less than what he expected. Some changes were made to Mr. LeMaster's Inmates Skills Development Plan and his case manager conferred with him why other changes would not be made.

On October 25, 2010, Mr. LeMaster sent another inmate request to the staff inquiring as to whether the April 23, 2008 memorandum still reflected the criteria used to determine RRC placement and whether a more timely memo had gone into effect. Mr. LeMaster's case manager incorrectly advised Mr. LeMaster that the April 23, 2008 memorandum was still used. However, since the June 24, 2010 Memorandum was prospective, the April 23, 2008 Memorandum contained the criteria and process applicable to Mr. LeMaster.

---

[2]This category is broken down into considerations of Educational/Vocational Participation; FRP Participation; Work Performance; Counseling Programs; RPP Participation; Discipline History and Relevant Prior Record.

[3]This category is broken down into considerations of family support, specialized job skills, general job skills, residence, financial resources, promise of employment, life skills, community resources, and "other."

# I.
## WHETHER THE TIMING OF MR. LEMASTER'S RRC PLACEMENT REVIEWS ENTITLE HIM TO HABEAS RELIEF?

Mr. LeMaster contends that Respondent misstates the review policy by characterizing it as requiring review "approximately" seventeen to nineteen months. Mr. LeMaster notes that his initial placement decision was made nearly 22 months before his release date and that this was outside the parameters of BOP policy. Mr. LeMaster advises that timeliness is not his "primary" concern and does not explain how, if at all, he was prejudiced by the timing of his reviews. After Mr. LeMaster's August 19, 2010 transfer to the Federal Prison Camp in Yankton, and after Mr. LeMaster submitted a September 9, 2010 inmate request to discuss his prior recommendation of a 150–180 day pre-release RRC placement, the Unit Team met with Mr. LeMaster, considered his situation and concerns and determined his recommended placement was of sufficient duration. Under the circumstances of his case the Court concludes that the timing of Mr. LeMaster's reviews was reasonable, and he is not entitled to habeas relief based on the deviation from the 17-19 month window. *See, e.g., Bevik v. Shartle*, 2010 WL 3463625 (N. D. Ohio, Aug. 31, 2010)(BOP acted reasonably to evaluate a proposed RRC placement date within one month of inmate's arrival at facility but less than 17 months before his scheduled release date).

# II.
## WHETHER RESPONDENT VIOLATED THE SECOND CHANCE ACT BY RELYING ON POLICIES THAT MR. LEMASTER ALLEGES PRECLUDE INDIVIDUAL DETERMINATIONS OF RRC PLACEMENTS?

In *Bowers v. Warden*, 2011 WL 795546 (D.S.D. Feb. 25, 2011), this Court upheld the application of the April 14, 2008 Memorandum regarding RRC placements. In upholding the requirement of the Regional Director's written concurrence for a pre-release RRC placement exceeding six moths, this Court observed that 18 U.S.C. §§ 3621(b) and 3624(c), read together, vest the BOP with broad discretion in considering RRC placement and concluded it was not unreasonable for the BOP to conserve the resources of RRCs by imposing the additional requirement of the Regional Director's written concurrence for a pre-release RRC placement exceeding six months. This Court in *Bowers* also considered 42 U.S.C. § 17501(5), which states that one of the purposes of the Second Chance Act is to "assist offenders reentering the community from incarceration to establish

6

a self-sustaining and law-abiding life by providing sufficient transitional services *for as short of a period as practicable*." (Emphasis added).

Although Mr. LeMaster's RRC placement was governed by the April 14, 2008 Memorandum, since the June 24, 2010 BOP Memorandum's guidelines have only prospective application, Mr. LeMaster's Unit Team addressed his RRC placement recommendation concerns after the June 24, 2010 Memorandum was implemented in the North Central Region at the end of August 2010. The June 24, 2010 BOP Memorandum directs that assessment and decision-making practices be conducted in a manner that allows RRC resources to be focused on inmates most likely to benefit from RRC placement in terms of reducing anticipated recidivism. Respondent's response includes the declaration of J.T. Weaver, the Regional Community Corrections Administrator of the BOP who oversees the re-entry programming for the twelve states in the North Central Region, the operations of six Community Corrections Offices, and the administration of contracts with local contract facilities. Attached to Weaver's declaration is substantial literature which Weaver contends lends empirical support to what the BOP has learned through its experience administering re-entry programs. The literature and Weaver's declaration contend, among other points, that high-risk inmates as a group benefit more from RRC placements in terms of reducing recidivism than do low-risk inmates such as Mr. LeMaster and others at low risk facilities such as the Yankton Federal Prison Camp.

Mr. LeMaster challenges the general validity of the studies relied upon by J.T. Weaver and challenges their application to him individually. Mr. LeMaster contends that a major problem with the line of reasoning presented by the Weaver declaration and attached literature is that it completely discounts the requirement of the Second Chance Act to determine each case on an individual basis. Should the BOP have used its research and reasoning as a blanket prohibition to low-risk inmates receiving more than 6 months of RRC placement or from benefitting from programs encompassed in the Second Chance Act, this Court may be persuaded by Mr. LeMaster's arguments. However, the Respondent has provided evidence that inmates from the North Central Region have been receiving pre-release placements longer than six months and that the staff has been encouraged to place low-

7

risk inmates directly into a home-confinement[4] situation, if possible. Although Mr. LeMaster questions how many of the RRC Placements of over 6 months were granted to minimum security inmates at the th Federal Prison Camp at Yankton, Mr. LeMasters concedes that at least two Yankton inmates received such placements. This Court concludes that the BOP's polices with regard to RRC placement are reasonable and consistent with the requirements of the Second Chance Act.

III.

## WHETHER THE HANDLING OF MR. LEMASTER'S RRC PLACEMENT RECOMMENDATION ENTITLES HIM TO HABEAS RELIEF?

Mr. LeMasterscontends that BOP staff did not conduct his RRC placement recommendation in good faith. As support for this contention Mr. LeMaster cites to a number of inaccuracies in his Inmate Skills Development Plan and the incorrect information he received about the current BOP policy on RRC placements. Mr. LeMaster contends his Inmate Skills Development Plan has been a train wreck,[5] and that many of the incorrect and incomplete items contained in the plan, such as his housing assignment, program participation, and mental and physical health, are relevant and material to determining his need, eligibility and appropriateness for RRC placement. The record establishes that there have been mistakes on the part of the prison staff in recording information concerning Mr. LeMaster but that the prison staff has made an effort to correct the mistakes and to consider the corrected information. The record further establishes that the BOP considered the mandatory factors enumerated in 18 U.S.C. § 3621(b) and 18 U.S.C.  § 3624(c)(6) in making Mr. LeMaster's RRC placement recommendation. The record does not establish bad faith on the part of the prison staff in the RRC placement review process. Bad faith " 'is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; ... it contemplates a state of mind affirmatively operating with furtive design or ill will.'" *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999)( quoting Black's Law Dictionary 139 (6th ed.1990)).

---

[4]18 U.S.C. § 3624(c)(2) provides for prerelease custody in home confinement placements for the shorter of 10 percent of a prisoner's term of imprisonment or 6 months.

[5]For instance, Mr. LeMasters's Plan has stated that RRC (MINT) is recommended for him. The MINT (Mothers and Infants Nurturing Together) is a residential program for minimum security women prisoners who are pregnant at the time of sentencing.

Mr. LeMaster is not entitled to habeas relief based on his claim of bad faith of the prison staff in making his RRC placement recommendation.

Mr. LeMaster contends that a number of factors including his history, completion of prison programs, institutional record, impaired employment prospects, health and family needs call for a longer RRC placement than what was recommended. None of these factors alone or in combination require the BOP to grant the maximum RRC placement.[6] Although for nonfrivolous reasons, Mr. LeMaster obviously believes that the prison staff misjudged his individual circumstances, the Court does not find any legal errors in the BOP's decision making process that would justify habeas relief.

The Eighth Circuit Court of Appeals has opined that 18 U.S.C. § 3625 precludes judicial review of agency adjudicative decisions. *See Martin v. Gerlinski*, 133 F.3d 1076, 1079 (8th Cir. 1998). This Court, having determined there were no legal errors in the BOP's decision making process that would justify habeas relief, cannot second guess the ultimate decision made by the BOP in determining the length of Mr. LeMaster's RRC placement recommendation. Accordingly,

IT IS ORDERED that Petitioner's request for relief under 28 U.S.C. §2241 is denied.

Dated this 2nd day of August, 2011.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: *Jackie Meisenheimer*
(SEAL)       DEPUTY

---

[6]Although incentives for a prisoner who participates in reentry and skills development programs include the maximum allowable period in a community confinement facility, this incentive is still within the discretion of the BOP. *See* 42 U.S.C. § 17541(2)(A).